MR.& MRS. FRANCISCO PEDRAZA
22 SOUZA COURT
ALAMEDA,CA. 94502
(510)522-9232

LINDA PEDRAZA, AS CO-PLAINTIFF
AND ON BEHALF OF MICHAEL PEDRAZA

FILED

C: JUL 24  PM 2: 16

RICHARD W. WIEKING
ERK. U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

PEDRAZA et al,                           CASE NO. C07-05989VRW
                                                  C07-04781VRW
Plaintiff                                         C05-04977VRW

                                         PLAINTIFF'S RESPONSE
vs.                                      TO THE ORDER TO SHOW
                                         CAUSE

ALAMEDA UNIFIED SCHOOL DISTRICT
et al,
         Defendants
                                                        )

1

1
2

Linda Pedraza herein after "Co-Plaintiff" hereby respectfully submits the following response to the July 11, 2008 show cause order in the above entitled action.

3
4
5
6

Co-Plaintiff by reference further moves for a renotice of the April 17, 2008 motion to intervene pursuant to Civ L.R. 7-9(b)(2)(3). Co-Plaintiff's renotice is based on this response, FRCP 24, FRCP 60(b) and the laws and statutes of the United States Constitution.

7

## I. INTRODUCTION

8
9
10

First, Co-Plaintiff seeks to intervene in this action pursuant to FRCP 24 on the behalf of Michael Pedraza on the ground that she and her minor child's interest have not been adequately represented due to the negligence and misconduct of former counsel Mr. Vernon Charles Goins II.

11
12
13
14
15
16

Co-Plaintiff further seeks this intervention because Co-Plaintiff has a substantial property interest in her minor son's IDEA claims; as these claims confers an unconditional right to intervene, are of a federal statute and are intertwined, and therefore, a common question of law and fact exists; and is the subject and property of the transaction which requires Co-Plaintiff, Linda Pedraza to intervene.

17
18

Second, Co-Plaintiff further moves to intervene on the grounds that her rights and her minor child's rights are "*joint rights,*" and their claims are "*inextricably intertwined.*" **See Maroni, 346 F.3d at 255**

19
20
21
22

Third, it is also the position of Co-Plaintiff that as a "party aggrieved" Co-Plaintiff is granted the right to bring suit in federal court asserting statutory violations pursuant to IDEA "*procedural and substantive rights.*"

23
24

It is Co-Plaintiffs position that her minor son's claims will be impeded if she is not allowed to intervene on her minor child's claims.

25

2

## II. FACTUAL SUMMARY

On or about December 11, 2007 Co-Plaintiff moved to dismiss Mr. Goins as counsel and moved to strike the pleadings in C07-04781MEJ now C05-04977VRW. On or about December 13, 2007 an order was issued rendering the captioned cases and actions as related. On or about December 19, 2007 Co-Plaintiff submitted a reconsideration of the order relating and subsequently consolidating the cases.

On or about December 26, 2007 Co-Plaintiff filed an opposition on the motions and declaration of Mr. Goins December 18, 2007 motion to withdraw, Co-Plaintiff also filed at this time an order to show cause for why Mr. Goins should not be held accountable for his attorney negligence.

On or about February 14, 2008 a hearing was convened reportedly to discuss Mr. Goins negligence, attorney misconduct and failure to respond to the order to show cause for why he should not be held accountable for his attorney misconduct. Mr. Goins negligence and failure to respond to Co-Plaintiffs show cause order was not addressed by the court.

On or about February 19, 2008 an order was issued on the show cause hearing which required Co-Plaintiff to show cause in writing on or before April 30, 2008 to determine if the action should not be dismissed without prejudice for absence of counsel. On or about April 17, 2008 Co-Plaintiff filed a "motion to intervene" pursuant to **FRCP 24**.

On or about June 3, 2008 an order was issued informing Co-Plaintiff that the court would treat the April 17, 2008 motion of Co-Plaintiff as a response to its February show cause order, and a hearing was scheduled for July 10, 2008 at 2:30 p.m. The Defendants were advised to respond with and an opposition on or before the 19th of June.

3

1    On or about June 19, 2008 the Defendants filed a "motion to dismiss"

2    disguised as an opposition to Co-Plaintiffs motion to intervene. Co-

3    Plaintiff responded with an opposition and a motion for substitution of

4    judge as a matter of right on or about June 27, 2008. On or about July 22

5    2008 Co-Plaintiff file a statement of objection to the June 10, 2008

     hearing and moved for the assignment of a new judge.

6        Co-Plaintiff at this time provides this court with a response to the

7    July 11, 2008 order to show cause for why Michael Pedraza should not be

8    dismissed from the above entitled action for absence of counsel, and why

9    the 42 USC §1983 claims should not be stricken from the complaint.

     **III. LEGAL ARGUMENT**

10       *CO-PLAINTIFF SHOULD BE ALLOWED TO INTERVENE AS OF RIGHT OR IN THE*

11   *ALTERNATIVE HAVE PERMISSION TO INTERVENE*

12       Federal Rule of Civil Procedure section 24 subdivision (a) states

13   that upon timely application *"anyone"* shall be permitted to intervene as

14   of right in an action: Such a right to intervene exists when (1) the

15   intervening party claims an interest relating to the property or

16   transaction which is the subject of the action and (2) the intervening

17   party is so situated that the disposition of the action may as a practical

18   matter impair or impede the intervener's ability to protect that interest

19   and (3)existing parties are not adequately protecting that interest.    It

20   is the position of Co-Plaintiff that all three of these elements are met

     in the matter before this court.

21       Co-Plaintiff's interest significantly relate to the transaction that

22   is the subject of the main claims in this action.

23

24

25

4

1
2
3

Co-Plaintiff is bringing the claims of her minor child and her own claims regarding the denial of educational services, and certain expenses as promised in a settlement agreement; and for the Alameda Unified School District herein after "AUSD" violation of state and federal laws.

4
5
6
7

The California Department of Education herein and after "CDE" are also a party to this action for their failure to adopt policies procedures, and practices to take appropriate measures necessary to ensure that the AUSD complied with the CDE compliance order.

8
9
10
11
12

The Office of Administrative Hearings here and after "OAH" is also a party to this action for their violation of state and federal law in that they have obstructed Co-Plaintiff and her minor child's right to a "fair trial in a fair tribunal" and further obstructed Co-Plaintiff and her minor child's right to a state review and appeal of the June 07' hearing decision.

13
14
15

The Defendants individually and collectively and in their official capacity have conspired to interfere with Co-Plaintiff and her minor child's civil rights pursuant to the statutes as argued herein.

16
17
18
19

Further, this motion to intervene is timely because opposition is not prejudiced in the delay and the delay is reasonable as Co-Plaintiff's motioned the court to intervene on her minor child's claims in the April 17, 2008 filing.

20
21
22
23

First, it is Co-Plaintiff's position that she should be allowed as a matter of right to intervene on her minor child's claims pursuant to **FRCP 24** as outlined in her April 17, 2008 motion to intervene, and paragraph 4 and 5 of page four of this pleading.

24
25

5

1    Second, it is also the position of Co-Plaintiff that such
2  intervention should be granted as Co-Plaintiff and her minor child's
3  rights are "*joint rights,*" under IDEA.

4    Such rights arise from the special nature of the relationship
5  between parents and their children and from the role of parents in
6  directing their children's education rights and opportunities.

7    These rights do not only belong to the child they are the rights
8  of both the parents and the children, and they are overlapping and
9  inseparable.  In enforcing parental rights under IDEA, parents are also
10  acting on behalf of their child.  This is so because parents are
11  responsible for their children's education rights and opportunities.
12  **See Meyer v. Nebraska, 262 U.S. 390 400, 43 S.CT 625, 67 L.Ed. 1042**
13  **(1923)**

14    Such rights are both the parent(s) and the child(ren) and parents
15  are entitled to control the education of their children and the state
16  may not arbitrarily proscribe certain areas of instruction.  It is for
17  this reason that Co-Plaintiff is a "*real party in interest*" in this
18  case and is entitled to pursue that indivisible concern which is both
19  the minor child's and Co-Plaintiff.

20.    Because IDEA grants parents the right to sue, there is no
21  question of whether the parent or the child is the real party in
22  interest in a parent IDEA suit.  Congress has  granted parents a right
23  of action under IDEA regardless of whether their IDEA suits present
24  procedural or substantive claims.

25

6

1    Co-Plaintiff argues this to be consistent with the primary
2    purpose of IDEA to assure an appropriate public education to children
3    with disabilities.  The focus of the IDEA, rest upon ensuring
4    appropriate educational opportunities to children with disabilities.

5    The Act recognizes the integral role of parents in effectuating
6    their child's education goals.  This recognition is evinced in the
7    language and structure of the IDEA and in the procedural safeguards
8    that are included to ensure active parental involvement at all stages
9    of the development and implementation of a child's individual education
10   program.

11   A key factor in the successful implementation of the goals of the
12   IDEA are the procedural safeguards that states and localities are
13   required to accord to "*children with disabilities and their parents or*
14   *guardians*" in order to assure "the provision of a free and appropriate
15   public education," *20 U.S.C. §1415 (a)*.

16   The  Act  requires  educational agencies to provide "an
17   opportunity for parents or guardian of a handicapped child to examine
18   all relevant  records with respect to the identification evaluation,
19   and educational placement of the child, and the provision of a free
20   appropriate public education to such child, and to obtain and
21   independent education evaluation of the child." *20 U.S.C.§1415*
22   *(b)(1)(A)*.

23

24

25

7

1       The educational agency must also provide "written prior notice to
2  the parents or guardian of the child whenever such agency or unit (1)
3  proposes to initiate or change , or (2) refuses to initiate or change,
4  the identification, evaluation or educational placement of the child or
5  the  provision of a free and appropriate public education to the
6  child." *20 U.S.C. §1415 (b)(1)(E).*

7       In addition the educational agency must provide parents with "an
8  opportunity to present complaints with respect to *"any"* matter relating
9  to the identification, evaluation, or educational placement of the
10 child, or the provision of a free appropriate public education to such
11 child." *20 U.S.C. §1415 (b) (6) (A).*

12      Congress sought to protect individual children by providing for
13 parental involvement in the development of state plans and policies at
14 every stage in the formulation of the child's individual educational
15 program.  The IDEA also provides substantial due process protection in
16 the form of administrative proceedings and an appeals procedure in the
17 event parents have complaints regarding the educational services
18 provided to their children.

19      "The parents or guardian shall have an opportunity for an
20 impartial due process hearing before the local educational agency, *20*
21 *U.S.C. § 1415 (b)(2),* and for an impartial review on appeal *20 U.S.C. §*
22 *1415(c)*

23

24

25

8

At these hearings all parties, specifically parents, are accorded: (1) the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of handicapped children, (2) the right to present evidence and confront, cross-examine, and compel the attendance of witnesses, (3) the right to a written or electronic verbatim record of such hearing and (4) the right to written findings of fact... *20 U.S.C. §1415(d)*.

Thus during administrative hearing proceedings under the IDEA, the Act explicitly envisions parents will act as advocates for their *"child's right"* to an appropriate education. Congress has also taken steps to ensure the effectiveness of parents as advocates during administrative proceedings by authorizing the establishment of training centers to assist parents in understanding their rights and their children's right under the Act and to help parents to participate effectively in administrative due process hearings. *20 U.S.C. § 1415(e)(2)(B)(I)*

At the conclusion of all administrative proceedings, the Act provides the right to bring a civil action in either federal or state court to any "party aggrieved" by the findings and decision made during the administrative proceedings. **20 U.S.C. § 1415(e)**

Despite the absence of explicit language in the IDEA conclusively determining the role of parents in IDEA appeals, the purpose and language of the IDEA presuppose the active involvement of parents in enforcing the educational rights of their children.

1    Through the IDEA, Congress gave to all children with disabilities
2  the substantive right to an appropriate education. Children however,
3  whether disabled or not are not able to evaluate the education they are
4  receiving or to request changes in the resources and opportunities made
5  available to them. The IDEA reflects the practical recognition that
6  parents are the persons who are vested with the authority and the
7  obligation to oversee their child's education and to enforce their
8  child's rights under the Act.

9    Parents are further invested with the procedural rights and
10  protections necessary to enforce the substantive protections and
11  guarantees of the IDEA. Evidence of "*congressional intent*" regarding
12  the role of parents during federal court proceedings under the IDEA may
13  be gleaned from the legislative history of the fee shifting provision
14  which states that "Congress' original intent was that due process
15  procedures, including the right to litigation be available to all
16  parents." Handicapped Childrens Protection Act of 1986, S. Rep. 99-
17  112, at 2 rentered at 1986 U.S.C.C.A.N. 1798, 1799

18    The Senate Committee members endorsed the principal that "the
19  parents of handicapped children must be able to access the full range
20  of available remedies in order to protect their handicapped child's
21  educational rights. The rights of children to receive an appropriate
22  education may well be meaningless without parents to guide the
23  evaluation of their needs and to monitor the implementation of their
24  individualized education program.

25

10

1    The procedural safeguards afforded to parents under the IDEA,
2    including the right to receive attorneys' fees, codify the role of
3    parents as the guardians of their children's education.  In light of
4    the special relationship between parents and their children and the
5    special role of parents in enforcing their children's rights under the
6    IDEA, the right of parents to control the education of their child and
7    the right of children to receive and appropriate education are highly
8    interwoven and interdependent.

9    The rights created by the IDEA are effectively shared by children
10   and their parents as parties to IDEA proceedings pursuant to 28 U.S.C.
11   $1654, and parents should be able to proceed pro se in IDEA appeals
12   brought in federal court to enforce their own rights and those of their
13   children.

14   Second, Co-Plaintiff vigorously argues that under the IDEA
15   "aggrieved parties" have the right to bring suit in federal court
16   asserting statutory violations and because the rights created by the
17   IDEA are effectively shared by children and their parents.  The parent
18   may then proceed pro-se on their behalf and on the behalf of their
19   minor child.

20   Under the provision of IDEA, all "aggrieved parties," school
21   committees and parents alike are entitled to judicial review.  *See*
22   *Rafferty v. Cranston Publ. Sch. Comm. 315 F3d. 21, 25 (1ˢᵗ Cir 2002)*

23

24

25

11

1        After a due process hearing, "any" party aggrieved can appeal the

2    findings and decision of the hearing officer to the state educational

3    agency.  If the parent remains dissatisfied, she can bring a civil

4    action in federal district court. *See Maine Sch. Admin Dist. No. 35 v.*

5    *Mr. & Mrs. R., on Their own Behalf and on Behalf of Their son, S.R. 321*

6    *F3d 9, 18 (1ˢᵗ Cir 2003)*

7        Parents ordinarily must exhaust their administrative remedies

8    before appealing to a federal court. *See Weber v. Cranston Sch, Comm.,*

9    *212 F3d 41, 51 (1ˢᵗ Cir 2000) (finding parents claim to be within the*

10   *zone of interests protected under IDEA and citing IDEA's statement of*

11   *statutory purpose, which specifies the statue's mission "to ensure that*

12   *the rights of children with disabilities and parents of such children*

13   *are protected")*

14       In so being that parents can be named plaintiffs in their

15   individual capacity in an IDEA suit.  These rights have included not

16   only procedural but substantive rights. *Kathleen H. v. Mass. Dep't of*

17   *Educ., 154 F3d 8, 13 (1ˢᵗ Cir 1998)* Additionally, a parents right in

18   the context of a compensatory education claim, which entitles a child

19   to further special education services under IDEA to compensate for past

20   deprivations. *See Maine Sch. Dist., 321 F3d at 17-18*

21       It is Co-Plaintiffs position that if Congress included parents

22   within the term *"parties aggrieved,"* (and they did) then the issue of

23   whether parents as guardians may bring suit under the *"common law"* on

24   their child's behalf as parties under 28 U.S.C. §1654 is irrelevant.

25

12

1   Because the statute enables parents to request due process
2 hearings, they are parties to such hearings and thus are logically
3 within the group of "parties aggrieved" and given the joint right to
4 sue. By statute, it is the parent who may invoke administrative
5 remedies *See 20 U.S.C. §1415(f)(1)*

6   It would make little sense if the parents who are explicitly
7 permitted to invoke those administrative remedies and to exhaust them
8 could not be parties for purposes of bringing suit.

9   The rule *expression unius est exclusion alterius* means that
10 Congress did not intend parents to be able to sue. Congress did
11 however, explicitly say that *"parents"* could bring due process hearings
12 and so, the argument is made, that Congress needed to include several
13 categories of plaintiffs and so used a collective term *"party*
14 *aggrieved."*

15   Co-Plaintiff establishes this argument on the grounds that
16 Congress sought to confer the right to judicial review of due process
17 hearings upon all parties involved in such hearings: school districts,
18 parents and children.

19   It is further Co-Plaintiffs position that she hold the "joint
20 right" of her minor son in asserting both his and her procedural and
21 substantive claims of a denial of a free and appropriate public
22 education under IDEA.

23

24

25

13

1       The *"parties aggrieved"* provision does not make a distinction

2 between procedural and substantive claims. As a general rule of law,

3 parties can be aggrieved by both substantive and procedural injuries.

4 ***See Cella v. Togum Constructeur Ensemleier en Industrie Alimentaire,***

5 ***173 F3d 909,911 (3rd Cir 1999);cf. FEC v. Akins, 524 U.S. 11 19, 118 S***

6 ***Ct. 1777 141 L.Ed. 2d 10 (1998)*** *(History associates the word*

7 *"aggrieved" with a congressional intent to cast the standing net*

8 *broadly."*

9       In determining whether a party is "aggrieved" by an

10 administrative decision and may thus seek judicial review, the issue is

11 usually not whether the injuries are substantive or procedural.

12 Rather, the issue is usually whether the party satisfies the

13 constitutional and prudential standing requirement. ***See e.g. Kan. City***

14 ***S. Indus. Inc. v. ICC, 902 F2d 423, 429, (5th Cir. 1990)***

15       To determine whether a party is aggrieved under 28 U.S.C. §2344,

16 a statute permitting parties aggrieved to seek judicial review of final

17 orders by specified agencies. Generally traditional Article III and

18 prudential standing analysis are incorporated to satisfy Article III

19 standing.

20       Parties must show injury in fact, causation and redress ability

21 to satisfy Article three standing. To meet the prudential standing

22 restrictions, parties must show that the harm asserted is to themselves

23 and not a generalized grievance pervasively shared by a large class of

24 citizens, and in statutory cases, that the claims is within the "zone

25 of interest" protected by the statue.

1    As a constitutional standing, parental IDEA suits meet the
2  causation and redress ability requirement.  The primary issue is injury
3  in fact.  Parents whose children are denied FAPE suffer the injury in
4  fact of either paying for private educational services or risk that
5  their children's education will not fully prepare their children for
6  employment and independent living. *See Ores v. Willow West Condo. Assn,*
7  *5 A.D.D. 275 (N. D. Ill. 1996)*

8    It is Co-Plaintiff's position that in raising procedural claims
9  the injuries suffered are likewise based on harm to her minor child.
10  The rational being that procedural inadequacies compromised Co-
11  Plaintiffs minor child's right to an appropriate education, and
12  seriously hampered the parents opportunity to participate in the
13  formulation process and cause a deprivation of educational benefit thus
14  constituting a "substantive harm" which resulted in a denial of the
15  child's right to a FAPE.

16    Hence, parental IDEA suits satisfy the two prudential standing
17  restrictions.  Such suits assert parents "own right" to seek judicial
18  review under *20 U.S.C. §1415 (i)(2)(A)* and the claimed harm to their
19  child's education is not a generalized grievance.

20    It is for this reason that Co-Plaintiff argues that none of the
21  provisions of IDEA regarding the right of parents to seek relief in
22  administrative or judicial hearing draws a distinction between the
23  substantive and procedural rights; therefore, lending right to the fact
24  that procedural and substantive rights under IDEA are "*inextricably*
25  *intertwined.*"

15

1      Co-Plaintiff on this basis is entitled to pursue her and her
2  minor child's substantive rights as well.  The Supreme Court has
3  rejected the argument that courts have the authority to only review for
4  compliance by state with IDEA procedural requirements and not for the
5  "substance of the state program."  *See Board of Educ. v. Rowley 458*
6  *U.S. 176 205-06, 102 S.Ct. 3034 73 L.Ed 2d 690 (1982)*

7      IDEA's procedural guarantees serve not only to guarantee the
8  substantive rights accorded by the Act; the procedural rights, in and
9  of themselves, form the substance of IDEA.  Hence, Co-Plaintiff should
10 not be limited to litigating only her procedural IDEA claims.

11     The statutory language and structure of IDEA resolve the issue of
12 whether parents may proceed pro se on both procedural and substantive
13 IDEA claims.  Nothing in the legislative history of IDEA suggests that
14 Congress intended that IDEA cases as a whole or substantive IDEA claims
15 alone could be brought in federal court only by lawyers.

16     Far from demonstrating an intent to circumscribe parental
17 involvement, the legislative history indicates Congress's commitment to
18 encouraging parental involvement at every step of IDEA's enforcement
19 process.  Any *"general"* rule or interpretations prohibiting pro se
20 representation would subvert Congress's intent by denying many children
21 their day in court.  Where parent(s) as in our case, could not obtain
22 representation, or could not find counsel willing to work for free;
23 those children with special needs would be precluded from exercising
24 their statutory right to judicial review of the administrative due
25 process hearings.

16

1       IDEA defines one of its purposes as seeking "to ensure that the

2 rights of children with disabilities and parents of such children are

3 protected. § *1400(d)(1) (B)*

4       The word "rights" in the quoted language refers to the rights of

5 parents as well as the rights of the child. It is therefore concluded

6 that IDEA does not differentiate through isolated references to various

7 procedures and remedies, between the rights accorded to children and

8 the rights accorded to parents.

9       The statute requires, in express terms that States provide a

10 child with a free appropriate public education "at public expense."

11 §*1401 (9)(A)* including specially designed instruction at no cost to

12 parents §*1401(29)*. It is Co-Plaintiffs position that she may seek to

13 enforce this mandate through federal courts, because among the rights

14 she enjoy is the "joint right" to a free appropriate public education

15 for her minor child. **See *Winkleman v. Parma City School Dist.* 127**

16 **S.Ct. 1994 (2007)**

17

18       Now in turning to the later of the order to show cause for why the

§1983 claims should not be dismissed. First it is Co-Plaintiffs position

19 that the §1983 claims should not be dismissed because Plaintiff has not

20 been afforded the opportunity to amend the "complaint for damages" which

21 was filed and signed by former counsel Vernon Goins without Plaintiffs

22 request consent or verification.

23

24

25

17

1        Second, the §1983 claims while not properly structured pursuant to

2    Plaintiffs substantive rights are however valid and Plaintiff is entitled

3    to damages pursuant to violations of Plaintiffs statutory, civil and

     constitutional rights under section 504 of the Rehabilitation Act of 1973.

4        Third, the §1983 claims should not be dismissed pursuant to the

5    supplemental complaint now before this court; hence rendering any motion

6    to dismiss these claims denied at this time.

7    **III CONCLUSION**

8        Co-Plaintiff hereby concludes that she is entitled to represent her

9    minor child's procedural and substantive IDEA claims pursuant to the

     statutes unambiguous legislative history which unequivocally buttressed

10   the fact that parents are "aggrieved parties."

11       This fact is furthered by the "joint rights" afforded to both the

12   child(ren) with a disability and their parent who is responsible for their

13   child's education and enforcement of their child's educational right to a

14   FAPE.

15       It is equally clear that the statutes do not draw a distinction

16   between the substantive and procedural right; thus clarifying that

     procedural and substantive rights under IDEA are "inextricably
17
     intertwined." IDEA's procedural guarantees serve not only to guarantee
18
     the substantive rights accorded by the Act; the procedural rights, in and
19
     of themselves, form the substance of IDEA.

20       Nothing in the statutory language and the legislative history of

21   IDEA suggests that Congress intended that IDEA cases as a whole or

22   substantive IDEA claims alone could be brought in federal court "only" by

23   lawyers.

24

25

18

Hence, Co-Plaintiff should not be limited to litigating only her procedural IDEA claims and therefore seeks to intervene on the behalf of her minor child's claims which are rights joined and highly "interwoven and interdependent." *Maroni 346 F3d. at 255.*

Co-Plaintiff therefore moves this court at this time, for good cause, to grant her the right to intervene to represent her and minor child's IDEA claims. Co-Plaintiff's motion to intervene is based on this show cause response, Co-Plaintiff's April 17, 2008 motion to intervene, Mr. Goins "complaint for damages," February 19, 2008 show cause order, and all pleadings in this matter, evidence and arguments that may be offered at hearing.

Co-Plaintiff concludes that all claims pending dismissal be vacated pursuant to the supplemental complaint hereby submitted today and now before this court.

I declare under the penalty of perjury under the laws of the state of California the foregoing statements to the best of my knowledge and belief contains the relevant facts relating to our request and such facts are true and correct.

Dated:   July 24, 2008

Linda L. Haynes-Pedraza

19

## PROOF OF SERVICE

I _Carlvin  Dustice_ declare that I am over the age of eighteen years and not a party to the within action. My business address is 1414 62nd Street, Emeryville, California 94608.

On the date below, I served the following document(s):

**Plaintiffs Response to the show cause hearing, Supplemental Complaint**

On each interested party in said cause as indicated below:

___ by facsimile

X (by U.S. Certified Express Mail Overnight) I caused a copy of said pleadings to be sent by overnight mail to the parties listed below:

___ by personal service:

Katherine Alberts, Claudia Leed
STUBSS & LEONE
2175 N. California Blvd., Suite 900
Walnut Creek, California 94596

Greg Wedner,
LOZANO SMITH
2000 Crow Canyon Place, Suite 5319
San Ramon, CA 94583

Office of Administrative Hearings
Special Education Division
Sherianne Laba, Presiding ALJ
2349 Gateway Oaks Drive, #200
Sacramento, CA 95833-4231

Terri A. McFarland, DGC
CALIFORNIA DEPARTMENT OF EDUCATION
1430 N. Street, Suite 5319
Sacramento, CA 95814

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 24, 2008 in the county of Alameda.

Signature